IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DANNY MOORE and TRACY MOORE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WASTE MANAGEMENT OF MISSISSIPPI, | ) | |
| INC., d/b/a WASTE MANAGEMENT OF | ) | |
| MISSISSIPPI-CORINTH, | ) | |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-2938-STA-egb |
| | ) | |
| INDUSTRIAL MAINTENANCE SERVICE OF | ) | |
| TENNESSEE, INC., DESIGN-FAB, INC. and | ) | |
| GENERAL ELECTRIC CONSTRUCTION | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Industrial Maintenance Service of Tennessee, Inc.'s[1]

("Design-Fab") Motion for Summary Judgment (D.E. # 101) filed October 26, 2012.

Intervening Plaintiff Waste Management of Mississippi ("Waste Management") filed a Response

(D.E. # 112) on November 21, 2012. Plaintiffs Danny Moore ("Moore") and Tracy Moore

("Tracy Moore") (collectively, "the Moores") filed a Response (D.E. # 114) adopting Waste

Management's Response in its entirety on November 23, 2012. The Moores filed a second

---

[1] Industrial Maintenance Services of Tennessee, Inc. changed its name to Design-Fab, Inc. in February of 2011. (Cooper Dep. 10:4-14, D.E. #102-1).

Response (D.E. # 115) on November 23, 2012.  Design-Fab filed a Reply (D.E. # 119) to both

Waste Management's and the Moores' Responses on December 5, 2012.  The Moores then filed

a Motion pursuant to Rule 56(d) (D.E. #129), requesting leave to file a Supplemental Response

incorporating additional deposition testimony on December 11, 2012.  The Court granted this

Motion in an Order (D.E. # 186) dated April 3, 2013, allowing the Moores to submit a

supplemental response incorporating the deposition testimony of Anita Cooper, a co-owner of

Design-Fab, and Greg Miley ("Miley"), a Waste Management employee, but specifically

disallowing the use of Moore's supplemental deposition of January 9, 2013.  Pursuant to this

Order, the Moores filed a Supplemental Response (D.E. # 193) on April 17, 2013.  Design-Fab

filed a Reply (D.E. # 205) to this Supplemental Response on May 1, 2013.  For the reasons given

herein, the Court **GRANTS** Design-Fab's Motion for Summary Judgment.

## BACKGROUND

For the purposes of summary judgment, except where noted, the Court accepts the

following as established.

Design-Fab is a Tennessee corporation engaged in maintenance support for industrial

manufacturers.  (Cooper Dep. 11:18-12:4, D.E. # 102-1).  General Electric hired Design-Fab in

June 2010 to perform driveway repairs at General Electric's plant in Selmer, Tennessee.  (*Id.* at

12:9-11, 12:18-25).

On June 25, 2010, Design-Fab contacted Waste Management, a Mississippi corporation,

to obtain a container for the waste asphalt, dirt, and gravel.  (*Id.* 29:6-10).  Design-Fab provided

Waste Management with a description of the job, and Waste Management agreed to deliver a 30-

yard open top container ("the Container") to the jobsite.  (*Id.* 29:6-20; Null Dep. 30:17-25, D.E.

# 102-2).[2]  Waste Management and Design-Fab reduced their agreement to a writing titled

"Temporary Roll-Off Agreement" ("the Agreement").  (Cooper Dep. 21:21-22:8, Ex. 1;

Shackelford Dep. 13:1-10, Ex. 16, D.E. # 102-3).

As relevant to the dispute between the parties, the Agreement contained the following

language: "Customer agrees to not overload (by weight or volume), move or alter the equipment,

and shall use the equipment only for its proper and intended purpose."  (Cooper Dep. Ex. 1).

Customer, in this instance, refers to Design-Fab.  (*Id.* 21:21-22:8 & Ex. 1; Shackelford Dep.

84:22-85:1, Ex. 16).  The Agreement contained no specific language noting the weight limit for

the Container, nor did the Container have any markings indicating a weight limit.[3]  (Cooper Dep.

21:21-23:5, 162:22-163:11, Ex. 1; Shackelford Dep. 72:15-21, 73:21-75:11).  Waste

Management further did not orally inform Design-Fab of a specific weight limit.[4]  (Cooper Dep.

---

[2] The Moores dispute this fact, stating Kevin Shackelford testified that a salesman would have warned Design-Fab about filling the container to more than half-full.  To support this assertion, the Moores cite to Kevin Shackelford's deposition.  However, the cited portion of the deposition does not mention anything about warning Design-Fab not to fill the container more than half-full.  (Shackelford Dep. 71:8-14, D.E. # 102-3).  Further, even if the cited testimony supported this assertion, the Court fails to see how it would put this fact in dispute.

[3] The Court notes Waste Management objects on the basis Design-Fab's paragraph contained more than one fact.  This failure to abide by LR 56.1(a) does not prejudice Waste Management or the Moores, as both Waste Management and the Moores  agree these facts are undisputed, the Court **OVERRULES** this objection.  For the sake of brevity, the Court also **OVERRULES** further objections of this nature if it is apparent no prejudice accrues to any party from the compound nature of the facts introduced.

[4] The Moores dispute this fact, again arguing Shackelford testified that it is Waste Management policy to warn customers to not fill containers past a certain level depending on the material going into the box.  Shackelford does testify to this fact.  (Shackelford Dep. 75:15-21).  However, Shackelford also stated he did not know if that conversation took place in this instance.  (*Id.* 75:22-25).  Shackelford further testified the salesperson involved, Greg Miley, could not remember whether Miley had informed Design-Fab of a specific level to which they could fill the Container.  (*Id.* 76:6-13).  It does not appear that there is record evidence directly contradicting Dale Cooper's testimony that Waste Management did not inform Design-Fab of a specific weight limit.

22:13-20; Shackelford Dep. 75:12-76:13.)  In Design-Fab's previous dealings with Waste Management, Waste Management had never given Dale Cooper ("Cooper"), the President and co-owner of Design-Fab, a specific weight limit.[5]  (Cooper Dep. 46:21-47:7, 68:1-8, 68:22-25).  Either Cooper or Anita Cooper requested containers from Waste Management on each of these occasions.  (A. Cooper Dep. 21:4-22:5).  Before June 25, 2010, on at least three occasions, Design-Fab had rented 30-yard containers from Waste Management and filled them to the same volume with no objection from Waste Management.[6]  (Cooper Dep. 46:21-47:7; E-mail, D.E. # 193-3).  However, on these occasions, Design-Fab loaded the containers with material weighing between 1.67 tons and 3.04 tons.  (E-mail).  Miley testified, in his opinion, that contractors would know not to fill a roll-off container all the way with concrete, asphalt, or aggregate; and that contractors would know not to overfill a container with dirt, asphalt, concrete, and aggregate.[7]  (Miley Dep. 52:24-53:3, 56:11 D.E. # 195-1).  Miley further testified that, in his

---

[5] The Moores dispute this fact, stating that Waste Management Internal Comments indicate Design-Fab knew not to overfill the container by weight.  In support, the Moores direct the Court's attention to a document titled "Customer Internal Comments" where Waste Management personnel documented a conversation with Dale Cooper.  (Waste Management Production at 3, D.E. #116-1)  According to this document, Dale Cooper indicated that the container was not overfilled and that Design-Fab had used Waste Management before and knew not to overfill a container.  Nothing in this document suggests Waste Management had given Design-Fab a weight limit in the past, only that Design-Fab knew the container could not be "too heavy."  The Moores also rely on Kevin Shackelford's deposition testimony discussed above that it was Waste Management policy to discuss what volume of fill would be appropriate.  That Waste Management had a policy to discuss appropriate volume of fill does not contradict direct testimony that Waste Management did not, in fact, discuss weight limits on any particular occasion or occasions.

[6] The Moores dispute these facts by simply stating Cooper's testimony is unbelievable and making conclusory statements about Design Fab's alleged negligence.  The Court cannot make a credibility determination on summary judgment, and the Moores cite to nothing in the record to contradict Dale Cooper's testimony.  The Court will take these facts as undisputed despite the Moores' protest.  *See* Fed. R. Civ. P. 56(e)(2).

[7] Design-Fab objects to portions of this testimony as impermissible opinion testimony under Fed. R. Evid. 701.  The Court **OVERRULES** this objection, as it finds this testimony

experience, a contractor who overloaded a container would understand they would bear the responsibility to partially unload the container.[8]  (*Id.* 19:2-4).

Design-Fab performed the maintenance at the GE plant during the week of July 4, 2010. (Cooper Dep. 39:3-9; Yancey Dep. 44:23-45:9, D.E. #102-4).  Design-Fab loaded the Container with waste asphalt, dirt, and gravel only.[9]  (Cooper Dep. 15:24-16:6).  When Design-Fab completed the job, the materials in the Container were not running over the sides.  (*Id.* 17:14-17).  After completion of the driveway maintenance job on July 9, 2010, Design-Fab did not perform any more work at the G.E. plant.[10]  (*Id.* 16:24-17:3, 38:19-39:9).

On the same day Design-Fab completed the job at the G.E. plant, Design-Fab contacted Waste Management and requested Waste Management pick up the Container.  (*Id.* 106:8-12; Shackelford Dep. 15:5-9; Null Dep. 7:14-21, 8:16-9:3).  Waste Management attempted to collect the Container from the G.E. plant and informed Design-Fab they could not as the Container was overweight.  (Cooper Dep. 106:8-12; Shackelford Dep. 15:5-9; Null Dep. 7:14-21, 8:16-:9:3).

---

could be helpful to determine a fact in issue and is not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.  *See Farner v. Paccar, Inc.*, 562 F.2d 518, 528-29 (9th Cir. 1977) (Person with long experience in industry able to testify to expectations within that industry without qualification as expert witness under Fed. R. Evid. 702).

[8] Design-Fab again objects to this testimony as impermissible opinion testimony under Fed. R. Evid. 701.  For the reasons given *supra* n.7, the Court **OVERRULES** this objection.

[9] The Moores dispute this fact, stating there were other materials in the Container at the time of Moore's injury.  The Moores cite to no evidence indicating Design-Fab placed anything but asphalt, dirt, and gravel in the Container, other than the fact that four months later, other materials were present.  The Moores admit they "have no way of knowing which materials Design-Fab loaded into the [Container]."  The Court will consider this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

[10] The Moores dispute this fact, again stating they have no way of knowing what work Design-Fab performed at the GE Plant.  The Court considers this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

Waste Management and Design-Fab engaged in some discussions of how to remove the container. (Cooper Dep. 45:22-46:13, 107:12-21, 133:4-20, 134-22:135:6; Null Dep. 39:6-11; Shackelford Dep. 15:5-9). On July 9, 2010, Donna Null ("Null"), a Waste Management employee, told Anita Cooper that someone would need to remove part of the contents of the Container before it could be moved. (Waste Management Internal Comments at 3, D.E. # 116-1). Cooper offered to send Design-Fab employees to the G.E. plant to remove material from the Container, but only if Waste Management agreed to compensate Design-Fab. (Cooper Dep. 45:22-46:13, 107:12-21). On October 4, 2010, Anita Cooper called Waste Management and informed Waste Management they should have removed the container months ago. (*Id.* at 4.) On October 6, 2010, Waste Management left a message on Design-Fab's answering machine, giving two options for removal of the Container: Design-Fab could offload the container, or Waste Management could open the back door of the Container to allow material to fall out. (Waste Management Internal Comments at 4-5; Shackelford Dep. II 30:23-31:14, D.E # 116-4). On October 13, 2010, Waste Management telephoned Anita Cooper, who denied the Container was overloaded. (Waste Management Internal Comments at 6). On October 22, 2010, Cooper contacted Waste Management and told them that he had informed them that he was going to use the Container for dirt and asphalt, that nobody had informed him about a weight limit, and that he had understood references to overloading to mean that he should not have material hanging outside the Container. (*Id.* at 8).

As of November 19, 2010, Waste Management employed Moore as a roll-off truck driver, and had done so since 2002. (Cmpl. ¶ 8, D.E. # 4; Moore Dep. 11:16-20, 15:5-17). At the relevant time, Waste Management maintained an Operations and Safety Rules Book for Drivers and Helpers (the "Rule Book"). (Shackelford Dep. 23:15-22, Ex. 13). Design-Fab and

Waste Management agree that Waste Management expected drivers to adhere to the guidelines in the Rule Book; however, Moore testified that "a lot of times . . . we would empty half of [a container] out, Waste Management, the management would know about that also[,]" in apparent contradiction of the Rule Book. (Shackelford Dep. Ex. 13; Moore Dep. 118:16-21, 127:19-128:9). According to the Rule Book, Waste Management required drivers to determine if a container was "overloaded" or "overweight" after arriving for a pick up. (Moore Dep. 38:8-39:5; Shackelford Dep. 23:15-25:2, 26:9-27:1, Ex. 13). Moore testified drivers would determine whether a container was overloaded or overweight by sight and feel. (Moore Dep. 53:1-2). The Rule Book instructed drivers to "not hoist containers onto the truck that [were] too heavy;" however, Moore testified that in "certain situations," Waste Management would ask a driver to hoist an overweight container on the back of a truck to unload part of its contents. (Shackelford Dep. 29:3-7, Ex. 13; Moore Dep. 89:22-90:3). According to the Rule Book, "[i]f the front wheels of the truck begin to leave the ground when raising the container, the container is too heavy for the truck." (Null Dep. 10:7-11; Shackelford Dep. 29:3-7, Ex. 13). Moore was trained and aware of these requirements on November 19, 2010.[11] (Moore Dep. 34:4-37:5, 40:1-17, 84:10-86:5; Shackelford Dep. 29:12-14, 98:11-103:4).

On November 19, 2011, Waste Management sent Moore to the G.E. plant to collect a container containing scrap wood. (Moore Dep. 41:18-23, 61:25-62:7, Ex. 26; Yancey Dep. 16:15-19, 17:20-21). Waste Management states Mitch Fowler, Moore's supervisor at Waste

---

[11] The Moores dispute this fact, stating Moore was acting consistently with Waste Management common practice in dealing with overloaded containers. Whether or not Moore acted consistently with common practice is immaterial to whether or not he was trained and aware of a company policy contained in the Rule Book. Further, the deposition testimony cited does not support an inference it was common practice for Waste Management employees to attempt to hoist overweight containers; rather, the testimony indicated Waste Management gave Design-Fab an option of having Waste Management opening the back door of the Container and letting material fall out of the Container. (Shackelford II Dep 31:3-22, D.E. # 116-4).

Management, told Moore to not attempt to move the Container, though Moore disputes ever having this conversation. (Shackelford Dep. 59:24-60:5, 62:7-10; Waste Management Resp. to G.E. Interrs. No. 14, D.E. # 102-6; Waste Management Resp. to Design-Fab Interrs. No. 12, D.E. # 102-7, Moore Dep. 119:7-16). However, it is undisputed that Moore knew the Container was overweight before arriving at the G.E. plant.[12] (Moore Dep. 54:18-56:21, 62:11-17, 95:16-22, Yancey Dep. 17:20-18:2, 62:6-18, 111:3-17).

When Moore arrived at the G.E. plant, he had a conversation with Wes Yancey ("Yancey"), a G.E. employee regarding removal of the Container from the G.E. plant.[13] (Moore Dep. 61:25-62:17, Ex. 26; Yancey Dep. 29:10-12). Moore explained that he could hoist the overweight Container onto his truck and dump part of the contents, then haul the Container away, later returning with the empty Container so that G.E. employees could load the dumped material into the Container for disposal. (Moore Dep. 116:10-117:11, Ex. 26 at 6; Yancey Dep. 17:22-18:18).

Before attempting to winch the Container onto his truck, Moore attempted to open the Container doors to remove material; however, the Container had sunk into the ground, blocking the doors. (Moore Dep. 119:21-120:2). Moore then connected a winch cable ("the Cable") to the Container and attempted to partially hoist the Container onto his truck so he could open the Container door. (*Id.* 65:7-8, 94:19-35, Ex. 26). Moore operated the Cable from inside the cab of his truck. (Moore Dep. 67:14-23). Due to the weight in the Container, the truck tipped

---

[12] The Moores mark this fact as disputed. The portion of the record the Moores cite to put this fact in dispute only shows that Moore knew the Container was overweight on the "day of the accident." (Moore Dep. 52:11-13). Moore's later testimony clearly indicates he knew the container was overweight prior to arriving at the G.E. plant.

[13] There is conflicting testimony about whether Yancey asked Moore to move the Container or if Moore offered to move the Container. Who initially asked whom about the Container does not seem pertinent to the motion *sub judice*.

backwards, raising the cab off the ground. (*Id*. 67:14-23) While the truck cab was in the air, the Cable snapped, causing the front of the truck to crash to the ground. (*Id.* Ex. 26). As a result, Moore suffered a compression fracture to his T12 vertebra. (Moore Dep. 70:8-10, Ex. 26).

After Waste Management successfully removed the Container at a later date, Waste Management assessed Design-Fab for disposal of 68,540 pounds of waste material. (Cooper Dep. 63:6-8; Waste Management Resp. to G.E. Interr. No. 14; Waste Management Resp. to Design-Fab Interr. No. 12.) The Container had an empty weight of 3,800 pounds. (Waste Management Resp. to Design-Fab Interr. No 14.) Therefore, the total weight of the Container when Moore attempted to hoist the Container onto his truck was 72,340 pounds, or slightly more than 36 tons. The Cable carried a rating of 34.6 tons, or 69,200 pounds. (Shackelford Dep. 86:3-87:16, Ex. 18).

The Moores sued Design-Fab and General Electric in this Court on October 25, 2011, asserting theories of negligence, res ipsa loquitur, and loss of consortium. (Compl., D.E. # 4). Waste Management intervened in this action on January 26, 2012, asserting a subrogation interest in the outcome of the litigation based on their payment of worker's compensation to Moore. (Inter. Compl. ¶ 6, D.E. # 51). Design-Fab filed the instant Motion for Summary Judgment on October 26, 2012, arguing Design-Fab could not be held liable on a theory of negligence because Design-Fab did not overload the Container under the terms of the Agreement, because it was unforeseeable that Moore would attempt to hoist the Container in violation of Waste Management policy, because Design-Fab was not the actual or legal cause of Moore's injuries, and because Moore was at least 50% responsible for his injuries. Further, Design-Fab maintains that it is improper for Moore to introduce direct evidence of negligence while also arguing a theory of res ipsal loquitur. Finally, Design-Fab reasons that since Moore

cannot win on either direct negligence or res ipsa loquitur, the Court should grant summary judgment on Tracy Moore's derivative claims for loss of consortium. Waste Management and the Moores filed separate responses, arguing that material issues of disputed fact existed as to whether Design-Fab knew it overloaded the Container, whether Design-Fab could foresee that Moore would lift the Container, whether Design-Fab was the actual or legal cause of Moore's injuries, and whether Moore was at least 50% at fault for his injuries. The Moores and Waste Management further state Tennessee allows pleading in the alternative on theories of direct evidence of negligence and res ipsa loquitur. Finally, the Moores and Waste Management contend summary judgment is inappropriate on Tracy Moore's loss of consortium claim, as the Court should not grant summary judgment on Moore's underlying negligence claims.

## STANDARD OF REVIEW

A party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] In reviewing a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence[,]"[15] but instead must view the evidence in the light most favorable to the nonmoving party.[16] When the movant supports their motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[17] It is not sufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material

---

[14] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[15] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[17] *Celotex*, 477 U.S. at 324.

facts."[18]  These facts must constitute more than a scintilla of evidence, and must rise to the level

that a reasonable juror could find by a preponderance of the evidence the nonmoving party is

entitled to a verdict.[19]  To determine whether it should grant summary judgment, the court should

ask "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."[20]

A court must enter summary judgment "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, on which that

party will bear the burden of proof at trial."[21]  The Sixth Circuit interprets this to mean that "the

nonmoving party . . . 'put up or shut up' [on] the critical issues of his asserted causes of

action."[22]

## ANALYSIS

A court sitting in diversity will apply the substantive law, including choice of law rules,

of the state in which it sits.[23]  When analyzing tort claims, Tennessee courts follow the "most

significant relationship" approach of the Restatement (Second) of Conflicts of Law.[24]  In an

action for personal injury, Tennessee courts will apply the local law of the state where the injury

---

[18] *Matsushita*, 475 U.S. at 586.

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[20] *Id.* at 251-52.

[21] *Celotex*, 477 U.S. at 322.

[22] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[23] 28 U.S.C. § 1652; *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 496 (1941); *Macurdy v. Sikove & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990)).

[24] *Hataway v. McKinley*, 830 S.W.2d 53, 59-60 (Tenn. 1992).

occurred, unless some other state has a more significant relationship to the issue.[25]  The parties

appear to agree that Tennessee's substantive law of torts governs the outcome of this case.

Moore pleads causes of action against Design-Fab under common law theories of

negligence and res ipsa loquitur.  Tracy Moore pleads a cause of action for loss of consortium.

The Court will address these causes of action in turn.

## Negligence

In Tennessee, a plaintiff alleging the tort of negligence must show: "(1) a duty of care

owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of

care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5)

proximate or legal cause."[26]  Design-Fab argues the Moores and Waste Management have not

introduced evidence to support a finding that Design-Fab owed a duty of care,  that Design-Fab's

actions were the cause-in-fact of Moore's injuries, or that Design-Fab's actions were not the

proximate cause of Moore's injuries.  Design-Fab further asserts Tennessee's comparative

negligence regime precludes Moore from recovery.

The Court finds there is a question of material fact as to whether Design-Fab owed

Moore a legal duty.  "[D]uty…is the legal obligation of a defendant to conform to a reasonable

person's standard of care in order to protect against unreasonable risks of harm."[27]  "In general,

an individual has a duty to others to refrain from engaging in misfeasance, affirmative acts that a

reasonable person 'should recognize as involving an unreasonable risk of causing an invasion of

---

[25] *Id.* (citing Restatement (Second) of Conflict of Laws § 146).

[26] *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005) (quoting *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005)).

[27] *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Burroughs v. Magee*, 118 S.W.3d 323, 328-29 (Tenn. 2003)).

an interest of another' or acts 'which involve…an unreasonable risk of harm to another.'"[28] Tennessee courts use a version of the so-called "Hand Formula"[29] to determine whether a duty arises: "[a] duty arises when the degree of foreseeability of the risk and the gravity of the harm outweigh the burden that would be imposed if the defendant were required to engage in an alternative course of conduct that would have prevented the harm."[30] "A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable."[31] "The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury."[32] A court determines whether a risk is foreseeable at the time of the act or omission.[33]

Design-Fab's primary argument is that it was unforeseeable that their actions in loading the Container posed any significant risk of injury because they did not know they had overloaded the Container. Waste Management and the Moores counter that Design-Fab was on notice that

---

[28] *Id.* (quoting Restatement (Second) of Torts §§ 284, 302 (1965)).

[29] Referring to the opinion of Judge Learned Hand in *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947) ("[T]he owner's duty, as in other similar situations, to provide against resulting injuries is a function of three variables: (1) The probability that she will break away; (2) the gravity of the resulting injury, if she does; (3) the burden of adequate precautions. Possibly it serves to bring this notion into relief to state it in algebraic terms: if the probability be called P; the injury, L; and the burden, B; liability depends upon whether B is less than L multiplied by P: i.e., whether B is less than PL.")

[30] *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 365 (Tenn. 2008).

[31] *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005) (quoting *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)).

[32] *Id.* (quoting *Tedder v. Raskins*, 728 S.W. 343, 348 (Tenn. Ct. App. 1987)).

[33] *Linder Const. Co*, 845 S.W.2d at 178.

they were not to overload the Container by weight. The Court finds the undisputed evidence establishes Waste Management agreed to not overload the Container by either weight or volume, but that the contract did not define what would constitute overloading the Container by weight. Since the contract was for a lease of goods, the Court applies Tennessee's version of the Uniform Commercial Code to interpret ambiguous contract terms, Tenn. Code Ann. Title 47. Under Tennessee law, where a lease contract contains an ambiguous term, absent a course of performance over that particular contract, a court will interpret that term by the course of dealing between the parties.[34]

Design-Fab introduced evidence that showed over the course of dealing with Waste Management they had filled similar roll-off containers to a similar capacity with no problems in the past. However, the Moores introduced evidence the total weight of these containers varied from 1.67 tons to 3.04 tons. The Court finds a material difference between 3.04 tons and the more than 36 tons the Container weighed. Therefore, the Court finds the course of dealing between Waste Management and Design-Fab insufficient to establish 36 tons as a gap-filler under Tennessee adoption of the Uniform Commercial Code.

Since the Court is unable to establish that the Container held a reasonable amount of weight as a matter of law, the Court finds that it is at least a question of fact as to whether Design-Fab overloaded the Container by weight. Similarly, the Court finds it to be at least a question of fact as to whether Design-Fab could foresee that Moore would attempt to lift the Container, even in violation of written Waste Management policies. That an injury might be freakish in nature does not make it unforeseeable.[35] Tennessee law does not require a defendant

---

[34] Tenn. Code Ann. § 47-1-303.

[35] *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn. 1976).

have foreseen the exact chain of events leading to an injury, only that the defendant could foresee "the general manner in which the injury or loss occurred."[36]  The Court further finds that the cost to Design-Fab of precautions would not have been onerous: Design-Fab could have completed the driveway repair without overloading the Container by merely asking Waste Management to empty the Container multiple times during the job.  At this point in the proceedings, therefore, the Court finds that there is at least a question of fact as to whether Design-Fab owed Moore a duty of care.

The Court also finds there is a disputed issue of material fact over whether Design-Fab's actions were the cause-in-fact of Moore's injuries.  "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct."[37]  Ordinarily, cause-in-fact is a jury question.[38]  A court may only grant summary judgment for a defendant on cause-in-fact if "the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome."[39]  The inquiry as to whether something is a cause-in-fact of a plaintiff's injury is not "a metaphysical one, but rather a common sense analysis of the facts that lay persons can undertake as competently as the most experienced judges."[40]

---

[36] *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991).

[37] *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993).

[38] *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005).

[39] *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)).

[40] *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997 (citing Restatement (Second) of Torts §431 cmt. A (1965); Fowler V. Harper et al., *The Law of Torts* § 20.2, at 91 (2d ed. 1986); W. Page Keeton, *Prosser and Keeton on the Law of Torts*, § 41, at 264 (5th ed. 1984)).

Design-Fab first argues Moore's actions in attempting to hoist the Container, not Design-Fab's actions in overloading it, were the cause-in-fact of Moore's injuries. Design-Fab contends that had Moore not attempted to lift the Container, he would never have sustained his injuries. This is a misreading of the nature of but-for causation. "The defendant's conduct is the cause in fact of the plaintiff's injury if, as a factual matter, it directly contributed to the plaintiff's injury."[41] Under the classic formulation of but-for causation, but for Design-Fab's overloading of the Container, the Container would have met Waste Management's weight requirements. Had the Container met Waste Management's weight requirements, Waste Management would have removed the Container four months prior to Moore's attempt to move it. Put simply, but for Design-Fab's allegedly negligent conduct, the Container would not have been present on the GE property to injure Moore.[42]

Design-Fab goes on to argue the possibility that the chain would have snapped even had Design-Fab not overloaded the container. Design-Fab introduces evidence that Moore had lifted larger and heavier containers onto his truck using the Cable in the past. Design-Fab then states in conclusory fashion that the fact that the container may have been overweight is not enough to conclude that Design-Fab's alleged overloading of the container caused the Cable to snap. Further, Design-Fab attempts to argue that because the Cable had lifted heavier loads in the past than it was designed to lift, it might have been weaker than its rated strength due to wear.

---

[41] *Hale*, 166 S.W.3d at 718.

[42] The Court is mindful of the rhyme "For Want of a Nail": "For want of a Nail the Shoe was lost; for want of a Shoe the Horse was lost; and for want of a Horse the Rider was lost; being overtaken and slain by the Enemy, all for want of a little Care about a Horse-shoe Nail." Benjamin Franklin, The Way to Wealth 4 (1758).

It appears to the Court that Design-Fab misapprehends the standard of review on summary judgment. It is true that the Plaintiffs bear the burden of proof on whether Design-Fab's alleged overloading of the container was the cause-in-fact of Moore's injuries. However, Design-Fab seems to assume that Plaintiffs bear the burden of conclusively establishing their claims at summary judgment. This is not the case: all that Plaintiffs must do is create an issue of fact with competent evidence sufficient for a reasonable juror to come to the conclusion that Design-Fab's actions were more likely than not the cause-in-fact of Moore's injuries.[43] Plaintiffs do so: there is evidence in the record that the Cable was rated for 69,200 pounds, and that the actual weight of the Container at the time Moore attached it to the Cable was 72,340 pounds. The Court finds that a reasonable juror could conclude that Design-Fab overloaded the Container, and that this overloading more likely than not caused the Cable to snap. That Design-Fab presents alternate theories of what caused the Cable to snap does no more than create factual issues; it is inappropriate for the Court to resolve such on summary judgment.[44]

In support of its alternate causation argument, Design-Fab cites *Waste Management, Inc. of Tennessee v. South Central Bell Telephone*,[45] arguing the Tennessee Court of Appeals reversed the trial court's determination that a utility company's failure to install power lines at a height consistent with regulation was a cause-in-fact of the plaintiff's injuries, as several trucks of similar height had safely passed under the power lines before a third party had struck the pole supporting the lines, lowering the lines enough to snag on a passing truck. The Court finds this case inapplicable to the present motion. In *South Central Bell Telephone*, the Tennessee Court

---

[43] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[44] *See* Fed. R. Civ. P. 56(a).

[45] *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel.*, 15 S.W.3d 425 (Tenn. Ct. App. 1997).

of Civil Appeals reviewed *de novo* a trial court's findings of fact in a bench trial.[46]  The Court of Civil Appeals found the trial court's findings unsupported by the evidence, as the plaintiff had not introduced any evidence that had the power company installed their power lines to a regulation height they would not have fallen into the path of the truck.[47]  In contrast, the Plaintiffs here introduced at least *some* evidence the cable would not have failed had Design-Fab not allegedly overloaded the container.  It is up to the jury to determine whether it should credit that evidence, not the judge.

The Court likewise finds there are disputed issues of material fact as to whether Design-Fab's behavior was the proximate cause of Moore's injuries.

> [P]roximate, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established.  Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and our more or less inadequately expressed ideas of what justice demands[.][48]

Tennessee courts adopt a three-pronged test for proximate causation:

> (1) the tortfeasors conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.[49]

---

[46] *See Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009) (Appellate court will review findings of fact on a bench trial *de novo* with a presumption of correctness.)

[47] *S. Cent. Bell Tel.*, 15 S.W.3d at 433.

[48] *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n. 6 (Tenn. 1997) (internal quotations omitted).

[49] *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (collecting cases).

Ordinarily, proximate causation is a question for the jury.[50]

The Court finds there is a question of disputed material fact whether Design-Fab's actions in allegedly overloading the container were both a substantial factor in Moore's injuries and reasonably foreseeable by a person of ordinary intelligence and prudence.[51] "The substantial factor test for proximate cause reflects the inquiry fundamental to all proximate cause questions, that is, whether the harm that occurred was of the same general nature as the foreseeable risk created by the defendant's negligence."[52] "Foreseeability, of course, is ordinarily a jury question."[53] In this case, the Court cannot find "the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome."[54] At the very least, reasonable minds may differ on the point of whether it would be foreseeable that a Waste Management employee might be injured when attempting to move an overloaded container. As such, the Court finds this question appropriate for the jury.

Design-Fab, to show that its actions could not be the proximate cause of Moore's injuries as a matter of law, attempts to analogize the current case to a case from the Texas Court of Appeals, *Noblin v. EE Ranches, Inc.*[55] In *Noblin*, the Texas Court of Appeals found that the overloading of a roll-off container with scrap metal was not the proximate cause of injuries

---

[50] *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994).

[51] The Court notes Design-Fab makes no argument that there is a rule or policy under Tennessee law that should relieve them from liability.

[52] 65 C.J.S. *Negligence* § 208 (2013).

[53] *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 198 (Tenn. 1992).

[54] *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994).

[55] *Noblin v. EE Ranches, Inc.*, 296 S.W.3d 773 (Tex. Ct. App. 2009).

sustained by a motorcyclist when scrap metal fell out of the container.[56]  Important to the Texas

Court of Appeals' holding was application of a Texas rule that "an intervening cause bars a

defendant's liability . . . [if] forces generated by that defendant's negligence have already

ceased."[57]  It does not appear this is a rule of Tennessee law.  In *McClenahan v. Cooley*, the

Tennessee Supreme Court found that a defendant's act of leaving keys in the ignition of an

unattended vehicle could be a proximate cause of injuries sustained by a plaintiff when a third

party took the vehicle.[58]  In *McClenahan*, the "forces generated" by the defendant had certainly

ceased: he did not turn the key in the ignition, nor did he drive the vehicle that struck the

plaintiff.  The Tennessee Supreme Court found liability nonetheless.  In Tennessee, the focus of

proximate causation is whether or not a result is foreseeable, not whether the forces generated by

the defendant's negligence had ceased.  Further, Tennessee holds it inappropriate to apply

intervening cause doctrine when the alleged intervening cause is the plaintiff himself.[59]

Therefore, the Court finds *Noblin*'s application of Texas law easily distinguishable from this

Court's application of Tennessee law to these facts.

However, the Court does find as a matter of law that Moore may not recover from

Design-Fab on a theory of negligence because Moore was more than half at fault for his injuries.

Tennessee adopts the doctrine of modified comparative negligence.[60]  "[S]o long as a plaintiff's

negligence remains less than the defendant's negligence the plaintiff may recover; in such a case,

---

[56] *Id.* at 777.

[57] *Id.* (citing *Henry v. Houston Lighting & Power Co.*, 934 S.W.2d 748, 753-54 (Tex. App.-Houston [1st Dist.] 1996)).

[58] *McClenahan v. Cooley*, 806 S.W.2d 767, 776 (Tenn. 1991).

[59] *Potter v. Ford Motor Co.*, 213 S.W.3d 264, 273 (Tenn. Ct. App. 2006).

[60] *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992).

plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff."[61]  A Tennessee court may grant summary judgment (or judgment as a matter of law) on modified comparative negligence grounds.[62]  Summary judgment on modified comparative negligence grounds is appropriate if the court, evaluating the evidence in the light most favorable to the plaintiff, finds that reasonable minds could not differ that the plaintiff's fault was equal to or greater than the defendant's.[63]

Evaluating the evidence in the light most favorable to Moore, Moore knew the container was overweight.[64]  Moore was aware Waste Management regulations forbade him from hoisting an overweight container onto his truck, and that hoisting an overweight container posed a significant risk of injury.  There was no particular urgency to removing the container from the GE plant: it had remained there for four months.  Moore could have avoided any and all injuries through the simple expedient of not attempting to hoist the container onto his truck.  Although, as Plaintiffs point out, Design-Fab could have avoided Moore's injuries by either calling for a pickup of the container before it was overweight or by offloading material from the container

---

[61] *Id.*

[62] *See Friedenstab v. Short*, 174 S.W.3d 217, 228 (Tenn. Ct. App. 2004); *Morgan v. McCrory*, No. 2A01-9605-CV-00072, 1997 WL 266816, at *4 (Tenn. Ct. App. May 20, 1997); *Gunter v. Smith*, No. 03A01-9512-CV-00448, 1996 WL 283069, at *1 (Tenn. Ct. App. May 30, 1996).

[63] *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 91-92 (Tenn. 2000) (citing *Coln v. City of Savannah*, 966 S.W.2d 34, 44 (Tenn. 1998) (overruled on other grounds *W. v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545 (Tenn. 2005)).

[64] While Moore may not have known the exact weight of the Container when he attempted to hoist it, he knew it was overweight.  He was also in a better position to determine how overweight the Container was than Design-Fab: unknown persons had placed scrap wood, plastic, and Styrofoam into the Container after Design-Fab left the Container at the G.E. plant.  It further appears water entered the container at some point after Design-Fab left it at the G.E. plant.  (Pittman Decl. ¶ 4, D.E. # 193-4).

themselves, Moore indisputably would have incurred less cost to avoid his injuries. Further, the

likelihood of injury from Moore's actions was greater than the likelihood of injury from Design-

Fab's actions: while it might be foreseeable to Design-Fab that someone might lift the

overloaded Container, and foreseeable that lifting the Container might result in injury, Moore

*knew* someone would lift the Container. In other words, Moore's injuries were both more easily

foreseeable and more easily preventable by Moore than they were by Design-Fab, so Moore had

a higher duty to ensure his own safety than did Design-Fab. Therefore, under Tennessee's

version of the Hand formula, Moore was more at fault for his injuries than Design-Fab.[65]

Tennessee courts have found summary judgment on comparative negligence principles

appropriate when a danger was open and obvious. The Court finds the case of *Reed v.

McDaniel*[66] analogous. In *Reed*, the plaintiff, an invitee, fell through the second-story floor of a

water-damaged building.[67] The Tennessee Court of Appeals upheld the trial court's

determination on summary judgment that the plaintiff was at least more than 50% at fault for his

own injuries.[68] Crucial to the trial court's determination in *Reed* was testimony from the plaintiff

that he had observed and was aware the floors were rotten.[69] The duty owed an invitee by a

landowner under Tennessee law is one of reasonable care under all the circumstances, and is

based on the assumption the owner of the premises has superior knowledge of a perilous

---

[65] *See generally* R.H. Coase, *The Problem of Social Cost*, 3 J. L & Econ. 1 (discussing allocation of liability to least-cost avoiders).

[66] *Reed v. McDaniel*, No. W2009-01348-COA-R3-CV, 2010 WL 623619 (Tenn. Ct. App. Feb 23, 2010).

[67] *Id*. at *1.

[68] *Id.* at *6.

[69] *Id.* at *5.

condition.[70]  In the instant case, the Moores argue Design-Fab's superior knowledge of the materials in the Container militates in favor of Design-Fab being more than 50% at fault. However, as seen in *Reed*, where the plaintiff was aware of the danger, such superior knowledge falls from the equation: the plaintiff's ability to foresee and avoid his own peril mandated a finding the defendant was less at fault than the plaintiff.[71]  The undisputed facts of this case show Moore was aware that the Container was overloaded before he attached the Cable, that he knew hoisting an overweight container was dangerous, and that he could have avoided injury at no cost to himself.

Although the Court finds there are disputed issues of material fact on whether Design-Fab owed a duty to Moore, whether Design-Fab's actions were the actual cause of Moore's injuries, and whether Design-Fab's actions were the proximate cause of Moore's injuries, the Court holds that, as a matter of law, Moore was more at fault for his injuries than Design-Fab, and as such **GRANTS** Design-Fab's Motion for Summary Judgment on the issue of negligence.

### Res Ipsa Loquitur

"Under Tennessee law, res ipsa loquitur is a form of circumstantial evidence that permits, but does not compel, a jury to infer negligence from the circumstances of an injury."[72]  Res ipsa loquitur is a tool generally used where direct evidence of a defendant's negligence is inaccessible

---

[70] *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn Ct. App. 940 S.W.2d 69, 71).

[71] *See also Morgan v. McCrory*, No. 02A01-9604-CV-00072, 1997 WL 266816, at *4 (Tenn. Ct. App. May 20, 1997) ("Because Plaintiff knew and appreciated the dangers associated with the cracked condition of the driveway [and could have taken an alternate route] . . . the trial court did not err in directing a verdict in favor of the Defendant.")

[72] *Seavers v. Methodist Med. Cent. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999).

or unknown.[73]  Res ipsa loquitur is not in and of itself a separate cause of action; rather, it is a means of proving a cause of action for negligence.[74]

Both Design-Fab and the Plaintiffs devote their briefing on the issue of res ipsa loquitur to the question of whether a party may plead res ipsa loquitur when the party introduces direct evidence of negligence. However, the Court finds it unnecessary to answer this question. Under Tennessee law, Plaintiffs fail to make out the elements of res ipsa loquitur as against Design-Fab.

> [P]laintiffs intending to rely on the doctrine [of res ipsa loquitur] must establish three things. First, the plaintiff must identify how the injury occurred. Second, the plaintiff must demonstrate that the event causing the injury is of a kind which does not ordinarily occur in the absence of negligence. Third, in traditional terms, the plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control.[75]

Reading the facts in the light most favorable to the Plaintiffs, the Court does not see any way Plaintiffs could establish at trial how the instrumentality of harm—the Container—was in Design-Fab's exclusive control.[76]  Design-Fab left the Container at the G.E. plant four months before Moore hooked it to his truck. If anyone was in control of the roll-off container, it was Moore, not Design-Fab, and certainly Design-Fab did not have *exclusive* control of the Container. Therefore, the doctrine of res ipsa loquitur does not serve to provide an inference of negligence in this matter. Further, if res ipsa loquitur did apply to this case, as discussed above the doctrine of modified comparative negligence would preclude recovery as against Design-Fab.

---

[73] *Provident Life & Accident Ins. Co. v. Prof'l Cleaning Serv.*, 396 S.W.2d 351, 356 (Tenn. 1965).

[74] *See Howell v. Baptist Hosp.*, No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *3 (Tenn. Ct. App. January 14, 2003). *See also* 65A C.J.S. § 781 (2013).

[75] *Burton v. Warrn Farmers Co-op.*, 129 S.W.3d 513, 524-25 (Tenn. Ct. App. 2002) (internal citations and quotations omitted).

[76] The Court notes the Moores contend the Container was in G.E.'s exclusive control these four months. However, G.E. is no longer a party to this lawsuit.

Therefore, the Court **GRANTS** Design-Fab's Motion for Summary Judgment with respect to the issue of res ipsa loquitur.

### Loss of Consortium

Tracy Moore pleads a cause of action against Design-Fab for loss of consortium. "In Tennessee 'despite being a separate claim from that of an injured spouse for other damages, loss of consortium is also a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim.'"[77] "[T]he majority view, which holds that the fault of the physically injured spouse either reduces or bars recovery on the other spouse's loss of consortium claim, should be adopted in this state."[78] "[T]here must be a tort which gives rise to a cause of action that must be maintained by the [physically] injured spouse for the non-injured spouse to claim a loss of consortium."[79]

The Court found summary judgment appropriate on Moore's underlying tort claims, whether on a theory of modified contributory negligence or because Moore fails to introduce evidence to support of his claim. Therefore, Tracy Moore cannot maintain her suit for loss of consortium against Design-Fab. As a result, the Court **GRANTS** Design-Fab's Motion for Summary Judgment with respect to the issue of loss of consortium.

### CONCLUSION

Because Moore was at least 50% responsible for his injuries, the Court **GRANTS** Design-Fab's Motion for Summary Judgment with respect to his and Waste Management's claims for negligence. Because the Moores and Waste Management cannot show the Container

---

[77] *Tuggle v. Allright Parking Sys.*, 922 S.W.2d 105, 108 (Tenn. 1996).

[78] *Id.* at 109.

[79] *Id.* at 108 (quoting *Mist v. Westin Hotels, Inc.*, 738 P.2d 85, 90 (Haw. 1987)).

was in Design-Fab's exclusive control and because Moore was at least 50% responsible for his injuries, the Court **GRANTS** Design-Fab's Motion for Summary Judgment with respect to the Moores' and Waste Management's res ipsa loquitur theory of negligence. Because Tracy Moore's claim for loss of consortium is derivative of the claims for negligence on which the Court granted summary judgment, the Court **GRANTS** Design-Fab's Motion for Summary Judgment with respect to the issue of loss of consortium.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 31, 2013.